FILED
2025 OCT 06 04:08 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 25-2-29414-5 SEA

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY**

JOHN ROE 1, JOHN ROE 2, JOHN ROE 3, JOHN ROE 4, individuals proceeding under pseudonym,

Plaintiffs,

v.

THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS AND SUCCESSORS, a Utah Corporation registered to do business in the State of Washington, a/d/a "MORMON CHURCH", THE CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah Corporation, MOUNTLAKE WARD OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, an unincorporated Washington entity,

Defendants.

Case No:

**COMPLAINT FOR DAMAGES**

1. **NEGLIGENCE**
2. **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
3. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Plaintiffs, John Roe 1, John Roe 2, John Roe 3 and John Roe 4, by and through their attorneys, respectfully allege as follows:



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

## I. INTRODUCTION

1. Known pedophiles should not be given access to kids. Yet, that is exactly what Defendants—all Mormon Church entities—did in this case.[1] They gave a convicted child rapist a position of authority in the Church and facilitated his regular interaction with vulnerable children. They allowed him to hand out candy to kids during Sunday services. They encouraged him to dress up as Santa Claus at Christmas and have kids sit in his lap. They knew he was paying young boys from the Ward to do chores at his home—and did nothing to warn those boys about how dangerous this was. They exerted influence on Church members, including parents of young kids, to disregard this dangerous predator's past and treat him as if his horrible crimes never happened.

2. The results of Defendants' abject failure of care are horrific. Numerous children in the congregation suffered years of deviant grooming and sexual assault. One of those children was only five years old at the time he was molested. Another suffered hundreds of instances of sexual abuse. One was subject to nearly four years of sexual assault at the hands of this predator. And while all of this abuse was happening, Defendants continued to treat the predator as a valued member of the LDS community, enabling and facilitating his access to vulnerable children.

3. The man Defendants allowed to prey on the children of the Mountlake Ward was David Herget. In 1993, while serving as a High Priest in the Ward, Herget raped his 13-year-old daughter. He admitted to the crime, was convicted, and served time in jail. Defendants initially excommunicated Herget from the Church. But by 1997, he was allowed back into certain Church services. By the early 2000s, Herget was once again a regular presence at the Ward. Soon thereafter, under Defendants' watch, he was rebaptized, re-ordained as a High Priest, giving kids candy at Church, playing Santa at Christmas, and molesting the boys who are the Plaintiffs to this action.

4. Now grown men, Plaintiffs bring this suit to shine a light on Defendants' failure to

---

[1] The three Defendants to this action are the Corporation of the President of the Church of Jesus Christ of Latter-day Saints (and its successors), the Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints (and its successors), and Mountlake Ward of the Church of Jesus Christ of Latter-day Saints (and its successors). The Complaint collectively refers to these Defendants as the "Mormon Church," the "LDS Church," "LDS," or "Defendants."



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

protect them and other vulnerable children. They seek justice for the trauma they will forever carry with them, and—most of all—to help prevent the same harms from being visited on other innocent children.

## II. PARTIES

### A. Plaintiffs

5. Plaintiff John Roe 1 is a resident of Jackson County, Mississippi. As a child, his parents were members of the Mountlake Ward of the LDS Church in Mountlake Terrace, Washington. In approximately 1998**,** Roe 1 himself became a member of the Ward. Roe 1 regularly participated in Church services and other activities related to the Ward. From 2001 to 2005, Roe 1 was targeted, groomed, and sexually assaulted by David Herget in connection with Church services and activities.

6. Plaintiff, John Roe 2, is a brother of Roe 1 and a resident of Lee County, Florida. As a child, Roe 2 regularly participated in Church services and other activities related to the Mountlake Ward. In or about 2005, he was targeted, groomed, and sexually assaulted by Herget in connection with Church services and activities. In approximately 2003, Roe 2 became a member of the Ward.

7. Plaintiff John Roe 3 is a resident of San Francisco, California. As a child, Roe 3's parents were members of the Mountlake Ward. In approximately 1998, Roe 3 became a member of the Ward as well. Roe 3 regularly participated in Church services and other activities related to the Ward. From 2001 to 2005, Roe 3 was targeted, groomed, and sexually assaulted by Herget in connection with Church services and activities.

8. Plaintiff John Roe 4 is a resident of Seattle, Washington. As a child, Roe 4's parents were members of the Mountlake Ward. In approximately 1999, Roe 4 became a member of the Ward as well. Roe 4 regularly participated in Church services and other activities related to the Ward. From 2001 to 2005, Roe 4 was targeted, groomed, and sexually assaulted by Herget in connection with Church services and activities.

9. The sexual violence, molestation, abuse, and other extreme misconduct Plaintiffs suffered because of Defendants' failure of care has caused Plaintiffs profound and enduring harm, including significant emotional distress, psychological trauma, and mental anguish. The abuse has



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

caused Plaintiffs to lose their sense of trust, safety, and personal security, depriving them of the opportunity for normal and healthy development. The injuries Plaintiffs sustained are severe, ongoing, and permanent, affecting their emotional and psychological health in lasting and immeasurable ways.

**B. <u>Defendants</u>**

10. Defendant Corporation of the President of the Church of Jesus Christ of Latter-day Saints and Successors ("COP LDS") is and was at all relevant times, a foreign religious corporation of the LDS Church registered to conduct business in Washington. COP LDS is a corporation duly organized and operating pursuant to the laws of the State of Utah. COP LDS's principal place of business is 50 East North Temple, Floor 20, Salt Lake City, State of Utah 84150. COP LDS operates wards, stakes, areas, meetinghouses, congregations, temples, and other houses of worship within the State of Washington and other states. The quality, nature and extent of COP LDS' contacts with Washington state were (and are) such that COP LDS could reasonably anticipate being hailed into court in Washington state. Further, COP LDS transacts business and committed tortious acts in Washington state, and does business within and conducts continuous and systemic activities in King County, Washington.

11. COP LDS is independently liable for its own conduct as alleged herein, is liable as a successor in interest to another entity, and/or is an alter ego of the other Defendants.

12. Defendant Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints ("Bishop LDS") is and was at all relevant times a foreign religious corporation sole incorporated in the State of Utah. Bishop LDS is and was at all relevant times registered to conduct business in the State of Washington. The quality, nature and extent of COP LDS' contacts with Washington state were (and are) such that Bishop LDS could reasonably anticipate being hailed into court in Washington state. Further, Bishop LDS transacts business and committed tortious acts in Washington state, and does business within and conducts continuous and systemic activities in King County, Washington.

13. Defendant Mountlake Ward of the Church of Jesus Christ of Latter-day Saints, Mountlake Terrace, Washington ("Mountlake Ward") is and was at all relevant times an unincorporated



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

entity that conducted business in the State of Washington, including King County, Washington.

14. To the extent that the Mountlake Ward was a different entity, corporation, or organization during the period of time in which Herget used his position to target, groom, and sexually assault Plaintiffs, such entity, corporation, or organization is hereby on notice that it is intended to be a Defendant in this lawsuit and is named in the caption and in this complaint as the Mountlake Ward of the Church of Jesus Christ of Latter-day Saints, Mountlake Terrace, Washington.

15. To the extent that the Mountlake Ward is a successor to a different entity, corporation, or organization that existed during the period of time during which Herget used his position to target, groom, and sexually assault Plaintiffs, including any other entity, corporation, or organization that subsequently or eventually merged into the Mountlake Ward, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and in this complaint as the Mountlake Ward of the Church of Jesus Christ of Latter-day Saints, Mountlake Terrace, Washington.

16. All such the Mountlake Ward-related entities, corporations, or organizations are collectively identified and referred to herein as “Mountlake Ward.”

17. Given their relationship, COP LDS, Bishop LDS, and the Mountlake Ward are collectively referred to in this Complaint as “Defendants,” the “Mormon Church,” “LDS,” the “LDS Church,” or the “Church.”

18. The LDS Church authorizes and selects leaders to administer geographic areas known as Stakes and sub-units of Stakes known as Wards. The leader of a Ward is known as a Bishop. And the leaders of Stakes and Areas are known, respectively, as Stake Presidents and Area Presidents.

19. As part of their duties for the Church, the leaders of the Wards, Stakes, and Areas appoint Church members to serve as church administrators, spiritual leaders, home teachers, and Sunday school teachers. These positions are collectively referred to as “callings.” The Church leaders who appointed members to callings in the Mountlake Ward were at all times relevant to this complaint acting as agents of Defendants.

20. The LDS Church is the religious entity through which Herget held and used his position



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

as a Church member and trusted High Priest, to target, groom, and sexually assault Plaintiffs.

21. Plaintiffs are informed and believe and thereupon allege that, at all times mentioned herein, Defendants were the agents, servants, employees, successors-in interest, and/or joint venturers of their co-defendants and were, as such, acting within the purpose, course, scope, and authority of said agency, employment, successor-in-interest, and/or joint venture and that each and every Defendant as aforesaid was acting as principal and was negligent in the selection and hiring and retention of each and every Defendant as an agent, employee, successor-in-interest and/or joint venture.

22. Upon information and belief, the acts, conduct, and nonfeasance herein carried out by each and every representative, employee, or agent of each and every corporate business Defendant was authorized, ordered, and directed by their respective Defendant's corporate or business employers, officers, directors, and/or managing agents. Further, said corporate or business employers, officers, directors, and/or managing agents had advance knowledge of, authorized, and participated in the herein described acts, conduct, and nonfeasance of their representatives, employees, and agents. Upon the completion of aforesaid acts, conduct, and nonfeasance of the employees and agents, the aforesaid corporate and business employers, officers directors, and/or managing agents, respectively ratified, accepted the benefits of, condoned, and approved each and all said acts, conduct, or nonfeasance of their co-employees, employees, and agents. Moreover, as stated herein and at all times relevant, Defendants each knew or had reason to know, or were otherwise on notice, of the misconduct alleged herein, which created the risk of childhood sexual assault by a volunteer, representative, or agent, and failed to take reasonable steps or to implement reasonable safeguards to avoid acts of childhood sexual assault.

23. Herget was an agent, servant, member, and/or volunteer of Defendants when he groomed, molested, abused, and sexually assaulted Plaintiffs—who at the time were minors. During that period of childhood sexual assault and abuse, Defendants: (1) supervised and exercised control over relevant activities of Herget; and (2) had an affirmative, non-delegable duty to protect Plaintiffs and other vulnerable children from the known, readily foreseeable risk of sexual abuse by persons of authority within the Mormon Church.



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

24. Each Defendant is responsible for the events and happenings herein referred to, thereby legally causing the injuries and damages to Plaintiffs as hereinafter alleged.

## III. JURISDICTION AND VENUE

25. This Court has jurisdiction over the Parties and Claims for Relief in this action. Venue is proper under RCW 4.12.025 and RCW 4.28.185 because *inter alia* Defendants continuously transact business within and maintain extensive, purposeful contacts with and throughout the state of Washington, including King County.

## IV. FACTUAL ALLEGATIONS

**(Common to All Causes of Action)**

**Defendants' Knowledge of and Response to Sexual Predation of Children**

26. For years, the Mormon Church has been confronted with detailed allegations of children and other vulnerable individuals suffering deviant grooming, sexual abuse, and criminal assault at the hands of Church members. Repeatedly, these cases have shown how adults within the LDS hierarchy, including Church leaders, have used the power bestowed on them to prey on the innocent.[2]

27. In some cases, though not all of these cases, the Church responds to such allegations by

---

[2] Jim Walsh, *Former Mormon bishop accused of trying to lure teens*, USA Today (Jan 24, 2014), https://www.usatoday.com/story/news/nation/2014/01/24/mormon-bishop-sex-crime/4829127/; Jason Dearen, *Former Mormon bishop highlighted in AP investigation arrested on felony child sex abuse charges*, Associate Press (Mar. 13, 2024) https://apnews.com/article/mormon-church-investigation-child-sex-abuse-aedc8cfc9175ebadb18420ec25a5f99c; Lilly Fowler, *Why Several Native Americans Are Suing the Mormon Church*, The Atlantic (Oct. 23, 2016), https://www.theatlantic.com/politics/archive/2016/10/why-some-native-americans-are-suing-the-mormon-church/504944/; Michael Rezendes, Recordings show how Mormon church kept child sex abuse claims secret, PBS News (Dec. 4, 2023), https://www.pbs.org/newshour/nation/recordings-show-how-mormon-church-kept-child-sex-abuse-claims-secret ; Edward Helmore, *Mormon church rocked by child sexual abuse allegations in California,* The Guardian (Mar. 8, 2025), https://www.theguardian.com/us-news/2025/mar/08/mormon-church-child-sex-abuse-allegations-california ; Michael Rezendes, *Takeaways from The AP's investigation into the Mormon church's handling of sex abuse cases,* Associated Press (Dec. 3, 2023), https://apnews.com/article/mormon-church-investigation-child-sex-abuse-4db829616a5c5cfa351a2e95d778ae9e ; Michael Rezendes, *Seven years of sex abuse: How Mormon officials let it happen,* Associated Press (Aug. 4, 2022),https://apnews.com/article/Mormon-church-sexual-abuse-investigation-e0e39cf9aa4fbe0d8c1442033b894660 ; Michael Rezendes, *Recordings show how the Mormon church protects itself from child sex abuse claims,* Associated Press (Dec. 12, 2023), https://apnews.com/article/mormon-church-investigation-child-sex-abuse-9c301f750725c0f06344f948690caf16 .





909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

withdrawing the predator's membership. Often referred to as ex-communication, withdrawal of church membership is not required where an LDS member sexually assaults another member—even if the victim in a child. Rather, the only conduct for which Defendants mandate excommunication are murder or knowingly engaging in "plural marriage." *See General Handbook: Serving in The Church of Jesus Christ of Latter-day Saints* (The Church of Jesus Christ of Latter-day Saints, online ed., 2025), *available at churchofjesuschrist.org.*, 32.6.1.1, 32.6.1.2, 38.6.10.

28. The circumstances surrounding a decision to excommunicate an LDS member are shrouded in secrecy. The decision is made in a "membership council"—a highly confidential meeting of the Church leaders within a Ward, which may include the stake president, bishop, his counselors, ward or stake clerk. *See id.* at 32.5.1, 32.9.

29. Once the Church has decided to excommunicate a member, the fact of the excommunication—and the reasons for the decision—are closely guarded. According to the Mormon Handbook, the information is restricted to "only those who need to know." *See id.* at 32.12.2.

30. Defendants appear to follow this approach even when the Church has excommunicated a member for engaging in "predatory behaviors," including sexual predation of children. 32.12.2. The Mormon Handbook provides that a Bishop or Stake President may choose, but is not required, to provide warnings if a person's predatory tendencies put others at risk. The Handbook further provides that the leader "does not reveal confidential information and does not speculate." *See id.* at 32.12.2.

31. Upon information and belief, there is no requirement that every member of a Ward or Stake be informed where a member is excommunicated for sexually preying on children. Nor is there any other mechanism to ensure that young people who may come into contact with that member be warned about or otherwise protected from the predator.

32. Mormon teaching emphasizes that excommunicated members should be forgiven and integrated back into the Church, regardless of the reason for their excommunication and therefore even if the member sexually assaulted children. Mormon bishops are instructed to "testify that because of the Savior's atoning sacrifice, all can repent and become clean." *See id.* at 32.3. The Church teaches that "[h]elping someone repent, turn back to God, and be healed through the Atonement of Jesus Christ



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

is one of the most joyous experiences a person can have." *See id*. at 32.3.

33. One way to help an excommunicated member "repent [and] turn back to God", is to be "supportive and positive" with the person and involve him in Church activities, including volunteering. *See id*. at 32.3.

34. If Church leaders conclude that an excommunicated member has repented, he may be re-baptized into the Church. Rebaptism gives the member a clean slate, regardless of the reason he was excommunicated, even if the person sexually preyed on children. Starting over for a child molester may include assuming positions of leadership and authority within the Church. *See id*. at 38.6.2.5. Those positions may involve coming into contact with children.

35. LDS policy provides that after rebaptism, the Church must track members who have been convicted of child sexual abuse and should prohibit them from positions, or "callings," that directly involve children. In practice, however, the Church does not prevent predators from interacting and forming relationships with children in the congregation—as demonstrated Defendants' abject failure to protect Plaintiffs and other vulnerable children from a known child rapist, David Herget.

36. Notwithstanding the above, the Church has an affirmative, non-delegable special relationship duty of care to *inter alia*: (1) protect vulnerable children from foreseeable harm, including sexual abuse; and/or (2) control known sexual predators within their ranks. *E.g., C.J.C. v. Corp. of Catholic Bishop of Yakima*, 138 Wn.2d 699, 721-22, 948 P.2d 816 (1997); *N.K. v. Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints*, 175 Wn. App. 517, 526, 307 P.3d 730, *rev. denied*, 179 Wn.2d 1005 (2013). "The First Amendment does not provide churches with absolute immunity to engage in tortious conduct. So long as liability is predicated on secular conduct and does not involve the interpretation of church doctrine or religious beliefs, it does not offend constitutional principles." *C.J.C.*, 138 Wn.2d at 728. *See also Sanders v. Casa View Baptist Church*, 134 F.3d 331, 336 (5th Cir.) ("the constitutional guarantee of religious freedom cannot be construed to protect secular beliefs and behavior, even when they comprise part of an otherwise religious relationship between a minister and a member of his or her congregation. To hold otherwise would impermissibly place a religious leader in a preferred position in our society."), cert. denied, 525 U.S.



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

868, 119 S.Ct. 161, 142 L.Ed.2d 132 (1998).

**The Case of David Herget**

37. In 1993, David Herget was a member and ordained High Priest in the Mountlake Ward of the Mormon Church.

38. In or around 1993, it came to light that Herget had been raping and molesting his daughter. She was 13 at the time. Herget admitted the crimes, and in his confession reportedly described the victim, his own daughter, as "young, beguiling, and lovely."

39. After pleading guilty, Herget was convicted and sentenced to seven years in prison. Senior members and others in the Church wrote letters urging leniency for Herget. Ultimately, Herget's sentence was suspended, and he ended up serving only 180 days in jail. He was required to register as a sex offender with the Mountlake Police.[3]

40. In 2001, Herget was released from state supervision. Prior to that release, Defendants had allowed Herget to attend certain Church services. After his release, Defendants permitted Herget to once again actively participate in the Mountlake Ward. For example, Defendants gave him a calling that involved printing and disseminating programs during Sunday Services. In carrying out that calling, Herget asked boys to come to his house to help him print the programs. Upon information and belief, Defendants were aware of but took no action to prevent these visits.

41. Defendants' decision to allow Herget to print programs gave the appearance of authority and trustworthiness within the church, therefore, making it easier for him to recruit young boys to help him, which provided the necessary level of access to groom and molest the victims.

42. Defendants also allowed Herget to create a set of "special programs" for children. These "special programs" included candy Herget had taped inside the programs. Herget personally handed the "special programs" to the boys in the Ward during chapel. He did this in the plain sight of the Ward Bishop and the Stake President when he was visiting.

43. Because of his membership in the Church, Defendants allowed Herget to assist in other



[3] Lisa Chiu, *Jail Probes death of Suicidal Inmate,* The Seattle Times (July 4, 2005), https://www.seattletimes.com/seattle-news/jail-probes-death-of-suicidal-inmate/.



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

projects that involved children, including helping on scouting projects and providing rides to kids' sporting events.[4]

44. By 2002, just one year after Herget was released from state supervision, Defendants inexplicably re-baptized Herget into the LDS church, directly facilitating his access to vulnerable children. Rebaptism is supposed to be permitted only when an excommunicated member has repented. Herget had not repented—instead, by that time, he was already actively abusing at least three of the Plaintiffs—conduct that was a direct, proximate and readily-foreseeable result of Defendants' failure to protect vulnerable children from his known dangerous proclivities.

45. Indeed, from approximately 2001 to 2005, due to the Defendants' decision to rebaptize Herget, Herget was actively using his participation, membership, and position within the Church to target, groom, and sexually assault children in the Mountlake Ward. These deviant activities included meeting with children on Church property, during which meetings Herget showed children pornography and offered them cash to perform sexual acts.

46. Defendants' decision to rebaptize Herget strengthened his ability to groom children in the Ward. This rebaptism meant that LDS members in the Ward were expected to forgive Herget and accept him as a new person. For instance, in 2003, the Ward allowed Herget to participate in a talent show. The audience, consisting of members of the Mountlake Ward, clapped as Herget was allowed to perform a routine alone on stage with one of the victims.

47. In or around 2004, Defendants restored Herget's position of High Priest. Giving Herget that position of authority and trust further strengthened his ability to prey on children in the Ward.

48. In or around 2004, the Church had Herget dress up as Santa Claus at a Ward event and have young church members sit on his lap.

49. During the period of approximately 2001 to 2005, Defendants knew that Herget was using the authority vested in him by Defendants to interact with children from the Ward on and away

---

[4] Scott North, *How a predator fooled everyone,* HeraldNet (July 30, 2005), https://www.heraldnet.com/news/how-a-predator-fooled-everyone/.



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

from Church property and, upon information and belief, did nothing to meaningfully supervise much less try to stop those interactions. Nor did Defendants do anything to warn the children with whom Herget was interacting about his dangerous past, or otherwise protect them from known, readily-foreseeable risks of harm including sexual abuse.

50. On July 1, 2005, David Henry Herget was arrested on suspicion of 18 criminal charges, including six counts of child rape, six counts of child molestation, three counts of sexual exploitation of minors, and communicating with a minor for immoral purposes.

51. On or about July 2, 2025, while incarcerated at Snohomish County Jail, David Henry Herget committed suicide.

52. Plaintiffs were among the victims of Herget's sexual crimes.

**Allegations Specific to Roe 1**

53. From June 2001 to June 2005, Roe 1 was a minor child, Church member, and invitee of the Church.

54. During this time, as a direct, proximate and readily-foreseeable result of Defendants' acts and/or omissions, Herget groomed Roe 1 by giving him candy in church, giving him rides to church events, paying him to do chores at his house, and assisting him with boy scout projects.

55. Herget abused and assaulted Roe 1 by showing him pornography, masturbating him, watching him masturbate, and performing oral sex on him.

56. The consistent pattern of abuse over four years caused significant psychological trauma.

57. Herget used the position of authority Defendants knowingly gave this known child rapist to exploit Roe 1's fragile mental state to cause him extreme fear, anxiety, and confusion. All tactics employed for abuse purposes occurred during a highly vulnerable time of Roe 1's life. All tactics occurred while Herget was serving within the Church that Roe 1 believed he could trust with his well-being.

58. Defendants knew or should have known Herget was using his position of authority within the Church to groom and sexually abuse its minor members, prospective members, and invitees, including Roe 1. Yet, Defendants failed to take reasonable steps to prevent the abuse Roe 1 suffered



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

and/or otherwise protect Roe 1 from grooming and sexual abuse.

**Allegations Specific to Roe 2**

59. In approximately 2005, Plaintiff John Roe 2 was a minor child, prospective Church member, and invitee of the Church.

60. Roe 2 was Roe 1's brother.

61. As a direct, proximate and readily-foreseeable result of Defendants' acts and/or omissions, Roe 2 was assaulted by Herget when he was approximately 5 years old.

62. At that time, relying on the authority vested in him by Defendants, Herget visited Roe 2 under the pretense of carrying out the calling Defendants gave him to deliver a church program with candy that Roe 2 had not received during church services because he was home sick. Herget entered the Roe 2's bedroom, and groped and fondled him under his bed covers.

63. Defendants knew or should have known Herget was using his position of authority within the Church to groom and sexually abuse its minor members, prospective members, and invitees, including Roe 2. Yet, Defendants failed to take reasonable steps to prevent the abuse Roe 2 suffered and/or otherwise protect Roe 2 from grooming and sexual abuse.

**Allegations Specific to Roe 3**

64. From summer 2001 to June 2005, Plaintiff John Roe 3 was a minor child, Church member, and invitee of the Church.

65. As a direct, proximate and readily-foreseeable result of Defendants' acts and/or omissions, John Roe 3 suffered years of abuse by Herget beginning when he was 11 years old.

66. Herget would show Roe 3 and other children pornography and teach them to masturbate, as well as masturbate the boys himself. This would occur in the Ward parking lot, on church property behind closed doors, in separate anterooms where sacrament is prepared, and in Herget's home. Some of these events occurred during Sunday services in the church executive office, which Herget received access to as a High Priest.

67. Herget abused and assaulted Roe 3 by showing him pornography, masturbating him, watching him masturbate, and performing oral sex on him.



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

68. Defendants knew or should have known Herget was using his position of authority within the Church to groom and sexually abuse its minor members, prospective members, and invitees, including Roe 3. Yet, Defendants failed to take reasonable steps to prevent the abuse Roe 3 suffered and/or otherwise protect Roe 1 from grooming and sexual abuse.

**Allegations Specific to Roe 4**

69. From summer 2001 to June 2005**,** Roe 4 was a minor child, Church member, and invitee of the Church.

70. As a direct, proximate and readily-foreseeable result of Defendants' acts and/or omissions, Roe 4 was also repeatedly sexually assaulted and abused by Herget. The abuse began when Roe 4 was 10 years old. At that time, Hegert exposed Roe 4 to pornography while Plaintiff was playing Xbox at Herget's home. Over the next four years, Herget used his position of trust and authority within the Church to escalate his sexual abuse of Roe 4 to forced masturbation and oral sex.

71. Roe 4's parents were informed by another lay member of the church that Herget, who lived a few blocks from their home, had a history of sexual abuse of Herget's youngest daughter, but that he had repented. Herget's family observed Herget's participation and engagement in the Mountlake Ward and based on that, they trusted Herget's rehabilitation.

72. Defendants knew or should have known Herget was using his position of authority within the Church to groom and sexually abuse its minor members, prospective members, and invitees, including Roe 4. Yet, Defendants failed to take reasonable steps to prevent the abuse Roe 3 suffered and/or otherwise protect Roe 1 from grooming and sexual abuse.

73. The devastating abuse Plaintiffs suffered has left each of them with profound and lasting psychological wounds. Plaintiffs suffer from post-traumatic stress disorder diagnoses, require long-term therapy, struggle with social and relationship difficulties, and carry the additional burden of guilt and trauma related to Herget's suicide. These innocent children, who should have been protected by Defendants, instead became victims of a systematic failure that allowed a known predator to destroy their innocence. The impact extends far beyond the immediate trauma, permanently affecting their ability to form healthy relationships and function in society—a testament to



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Defendants' gross negligence and failure to protect the most vulnerable members of their congregation.

**Defendants' Wrongful Conduct Affecting All Plaintiffs**

74. Defendants knew that (1) Church premises and related locations providing unsupervised access to youth were conducive to sexual abuse and sexual predators, and that sexual predators, such as Herget in particular, had apparent, if not actual, authority within the Church community, while serving in priesthood roles (i.e. High Priest); (2) Herget could leverage any and all authority which his title and association with the Church provided over followers of their faith, including Plaintiffs; and (3) leaving Plaintiffs or other youth within the presence or supervision of Herget presented a risk of imminent harm.

75. Other staff, employees, volunteers, leaders, and officers knew or should have known that Herget was isolating Plaintiffs, and potentially other minor children, and committing inappropriate behavior with them. Defendants failed to take reasonable remedial action prior to prevent the molestation, sexual abuse, and assault of Plaintiffs and/or otherwise protect Plaintiffs and other vulnerable children from known, readily-foreseeable harm.

76. Prior to, during, and after Herget's sexual assault and/or sexual abuse, and molestation of Plaintiffs, Defendants, through their agents, representatives, servants, employees, and/or volunteers knew or should have known, reasonably suspected, and/or were otherwise on notice, that Herget's conduct and relationship with young children, including the four Plaintiffs, was inappropriate, unlawful, wrongful, and/or otherwise created a risk of childhood sexual assault.

77. Defendants intentionally and purposely failed to notify or warn other children, parents of children active in the congregation, or any other persons of the possible risk of further childhood sexual abuse by Herget, limit or supervise his access to children, including Plaintiff, and notify law enforcement and other appropriate agencies of the known sexual assault and/or sexual abuse, and molestation of Plaintiffs.

78. Defendants are liable to Plaintiffs for harm from the sexual assault, abuse, and other misconduct committed by Herget because, inter alia, Defendants:



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

a) Negligently hired, supervised, retained, monitored, and/or investigated Herget.

b) Breached their duty to implement and enforce adequate policies, guidelines, training, education, and procedures aimed at preventing, deterring, uncovering, and reporting instances of child sexual assault and/or abuse by adults, including its agents, servants, representatives, staff, and volunteers.

79. Defendants also intentionally and willfully implemented various measures intended and designed to, or which effectively, made Herget's conduct harder to detect including, but not limited to:

a) Placing Herget in a position of authority and good standing after Defendants knew or should have known, reasonably suspected, or were otherwise on notice, that Herget sexually abused and/or sexually assaulted, and molested minor children, and was a danger to minor children including Plaintiffs.

b) Permitting Herget continued and/or unsupervised access to Plaintiffs and other vulnerable children, after Defendants knew or should have known, reasonably suspected, or were otherwise on notice, of Herget's misconduct that created a risk of childhood sexual assault.

c) Failing to inform or concealing from law enforcement officials of the fact that Plaintiffs and others were or may have been sexually assaulted after Defendants knew or should have known, reasonably suspected, or were otherwise on notice, that Herget had, and/or was, engaged in the sexual assault of Plaintiffs, thereby creating the circumstance where Plaintiffs and others were less likely to receive medical/mental health care and treatment, thus exacerbating the harm to Plaintiffs.

d) Holding out and affirming Herget to Plaintiffs and Plaintiffs' parents, other children, and their parents, and to the community as being in good standing and trustworthy.

e) Failing to take reasonable steps, and to implement reasonable policies, procedures, and safeguards to avoid, detect, and report acts of unlawful sexual conduct by employees, agents, representatives and volunteers, including Herget with minor



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

children.

f) Failing to implement a system or procedure to supervise or monitor employees, volunteers, representatives, or agents to ensure that they did not molest or assault minors in Defendants' custody or care, including Plaintiffs.

80. Defendants' failure and/or refusal to satisfy their duties to Plaintiffs was a part of Defendants' intended plan and arrangement to conceal wrongful acts, to avoid and inhibit detection, to block public disclosure, to avoid scandal, to avoid the disclosure of their tolerance of child sexual molestation and assault, to preserve a false appearance of propriety, and to avoid investigation and action by public authority including law enforcement.

81. Such actions were motivated by a desire to protect the reputation of Defendants and each of them, and to protect the monetary support of Defendants while fostering an environment where such assault could continue to occur.

82. The wrongful, intentional, negligent acts and/or omissions of Defendants, and each of them was a legal cause of the childhood sexual assaults that caused injuries to Plaintiffs.

## V. <u>FIRST CAUSE OF ACTION NEGLIGENCE</u>

**(Plaintiffs Against All Defendants)**

83. Plaintiffs re-allege and incorporate by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

84. Defendants are persons or entities who owed a duty of care to the Plaintiffs and/or to the minors' parents or had a duty to control the conduct of Herget by way of the special relationship existing between those individuals.

85. Despite knowing that Herget was a registered sex offender, Defendants gave him a calling including printing programs and made him a High Priest in a highly visible and child-facing role, effectively endorsing him as trustworthy and safe. This institutional endorsement gave Herget credibility he would not have otherwise had and enabled him to cultivate relationship with vulnerable children for abuse.

86. Defendants had a duty to warn or protect foreseeable victims including Plaintiffs.



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Defendants knew or should have known of Herget's misconduct and inappropriate sexual behavior directed toward Plaintiffs.

87. Despite knowing of Herget's misconduct and his propensity for molestation of children, Defendants failed to take any preventive action to control the conduct, failed to warn Plaintiffs or their parents and failed to report the abuse.

88. As a result of Defendants' negligence, Plaintiffs were sexually abused by Herget.

89. Had said Defendants fulfilled their duties and responsibilities to Plaintiffs in the special relationship had with minor Plaintiffs, the abuse would not have occurred.

90. As a direct and legal result of this conduct, and breach of trust, each plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, some of which were recently discovered within the past three (3) years, in an amounts exceeding the minimum jurisdictional limits of this Court.

## VI. <u>SECOND CAUSE OF ACTION</u>

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**(Plaintiffs Against All Defendants)**

91. Plaintiffs re-allege and incorporate by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

92. Acting with knowledge of their superior position and special relationship with Plaintiffs and realizing Plaintiffs' special susceptibility to emotional distress due to their age, inexperience, and vulnerability, Defendants aware of Herget's history and proclivity of sexual abuse, intentionally and maliciously decided to hide his abuse and gave Herget more authority, leadership and access to children, including Plaintiffs, intentionally causing Plaintiffs to suffer emotional harm, humiliation, mental anguish, and emotional distress, or with reckless disregard for the likelihood that it would cause Plaintiffs such distress, some of which were recently discovered within the past three (3) years.

93. As a direct and legal result of Defendants' actions and misconduct, Plaintiffs have been



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

damaged, emotionally, and physically, and otherwise, all to Plaintiffs have suffered and will continue to suffer physical and emotional injuries.

**VII. THIRD CAUSE OF ACTION**

**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**(Plaintiffs Against All Defendants)**

94. Plaintiffs re-allege and incorporate by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

95. Defendants' negligent acts and omissions exposed Plaintiffs to emotional injuries from Herget's sexual abuse and exploitation of them.

96. As a direct and proximate result, therefore, Plaintiffs have suffered and will continue to suffer physical and emotional injuries, some of which were recently discovered within the past three (3) years.

**VIII. PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants, their employees, and/or agents and each of them, as follows:

1. For an award of special (economic) and general (non-economic) damage according to proof;
2. Attorney's fees;
3. For costs of suit incurred herein; and
4. For such other and further relief as the Court deems just and proper.

**IX. JURY DEMAND**

Plaintiffs demand a trial by jury on all causes of action which may be tried by a jury.

DATED: October 6, 2025

Respectfully submitted,

PFAU COCHRAN VERTETIS AMALA PLLC

/s/ Ian M. Bauer
Ian M. Bauer, WSBA No. 35563
Darrell L. Cochran, WSBA No. 22851
909 A Street, Suite 700
Tacoma, WA 98402



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Telephone: 253.777.0799
Facsimile: 253.627.0654
Email: darrell@pcvalaw.com
Email: ibauer@pcvalaw.com

ANAPOL WEISS

/s/ Alexandra M. Walsh
Alexandra M. Walsh (*Pro Hac Vice* Forthcoming)
14 Ridge Square NW, Suite 342
Washington, DC 20016
Telephone: 202.780.3014
Facsimile: 202.780.3678
Email: awalsh@anapolweiss.com

ANAPOL WEISS

/s/ Paige N. Boldt
Paige N. Boldt, Esq. (*Pro Hac Vice* Forthcoming)
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: 202.780.3014
Email: pboldt@anapolweiss.com

DOLMAN LAW GROUP

/s/ R. Stanley Gipe
Matthew A. Dolman, Esq. (*Pro Hac Vice* Forthcoming)
R. Stanley Gipe, B.C.S. (*Pro Hac Vice* Forthcoming)
Sara D. Beller, Esq. (*Pro Hac Vice* Forthcoming)
800 N. Belcher Road
Clearwater, FL 33765
Telephone: 727.451.6900
Facsimile: 727.451.6907
Email: matt@dolmanlaw.com
Email: stan.gipe@dolmanlaw.com
Email: sara.beller@dolmanlaw.com

***Attorneys for Plaintiffs***



